UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH JOHANNES,<br><br>        Appellant,<br><br>v.<br><br>PATRICK ALLEN JOHANNES,<br><br>        Appellee. | Case No.: 15-CV-2598-AJB-BGS<br><br>**ORDER AFFIRMING THE BANKRUPTCY COURT'S RULINGS** |

Appellant Deborah Johannes ("Deborah") appeals the United States Bankruptcy Court's confirmation of Appellee Patrick Allen Johannes's ("Patrick") Chapter 11 Reorganization Plan ("Plan"), arguing the Plan was proposed in bad faith as it relates to Deborah and the valuation of her interest in Foothills Consulting Group, Inc. ("Foothills") is erroneous. (Doc. No. 45.) For the reasons set forth below, the Court **AFFIRMS** the bankruptcy court's rulings.

## BACKGROUND

Deborah and Patrick are former spouses. Following dissolution of their marriage and a subsequent eleven-day property division trial, the family law judge entered a proposed statement of decision ("PSOD") on December 20, 2013, which divided the parties' assets.

1

(Bankr. Doc. No. 30 at 12–57, Doc. No. 50 at 85–125, Doc. No. 51 at 2–6.)[1] On January 7, 2014, Patrick filed for Chapter 11 bankruptcy. (Doc. No. 75-8 at 120–33.) Pursuant to the bankruptcy court granting in part Deborah's motion for relief from stay, the family court entered its final statement of decision ("SOD") on May 8, 2014, judgment on which was entered February 26, 2015. (Bankr. Doc. No. 570 at 2–3, Doc. No. 54 at 40–41; *see* Doc. No. 75-8 at 69–115.)

Of relevance to the instant appeal, the family court awarded Deborah an equalization payment of $633,988.99. (Doc. No. 75-8 at 107.) This equalization payment included $548,500 for Deborah's community property interest in Patrick's business, Foothills Consulting Group, Inc. ("Foothills"), after which he would own 50% of Foothills as his sole and separate property.[2] (*Id.* at 80, 107.) The family court also awarded Deborah the parties' former family residence ("Robin Hill home" or "home") as her sole and separate property, finding she had a separate property interest of $504,000 in the home. (*Id.* at 88.) This was in addition to the $10,400 monthly spousal support Patrick was obligated to pay Deborah. (Doc. No. 75-1 at 64.) However, as the bankruptcy court found, Patrick did not have sufficient liquid assets to pay his obligations to all of his creditors, including Deborah. (Bankr. Doc. No. 571 at 17, Doc. No. 54 at 70.)

The bankruptcy court held a two-day evidentiary hearing on July 30 and 31, 2015. (Bankr. Doc. No. 570 at 4, Doc. No. 54 at 42.) On November 3, 2015, the Plan was confirmed. (Bankr. Doc. No. 572, Doc. No. 54 at 84.) Pertinent to this appeal, the Plan required the sale of the Robin Hill home. (Bankr. Doc. No. 572 at 28, Doc. No. 54 at 106.)

---

[1] Both parties cite to the docket numbers assigned to documents in the underlying bankruptcy litigation. Accordingly, the Court will largely cite to documents using those citations. Such citations will be noted as "Bankr. Doc. No." The Court will also provide parallel citations to this Court's CM/ECF system-generated document and page numbers as "Doc. No." Where the bankruptcy court docket numbers are illegible, the Court will cite to the "Doc. No." only.

[2] Philip Ashworth and his wife own the other 50% of Foothills. (Doc. No. 75-7 at 65 ¶ 2.)

The Plan also revalued Deborah's interest in Foothills, reducing her interest to $354,758. (Bankr. Doc. No. 571 at 14, Doc. No. 54 at 67.) While Foothills' overall valuation had increased, the reduction to Deborah's interest was due to the bankruptcy court's application of a litigation discount. (Bankr. Doc. No. 571 at 10–14, Doc. No. 54 at 63–67.) This discount was prompted by litigation Deborah threatened to bring against Patrick, his business partner Philip Ashworth ("Ashworth"), and Foothills. (Bankr. Doc. No. 571 at 10, Doc. No. 54 at 63; *see* Bankr. Doc. No. 420 at 7–13, Doc. No. 75-5 at 9–15.) Deborah asserted a claim of at least $970,000 for payment of her attorney's fees and dividends that Foothills distributed to Patrick. (Bankr. Doc. No. 571 at 10, 13, Doc. No. 54 at 63, 66.) Based on the testimony of Patrick's expert, Stephen Jones ("Jones"), the bankruptcy court discounted Deborah's interest in Foothills by $242,500 (calculated as 25% of $970,000), representing "the maximum exposure a buyer would face." (Bankr. Doc. No. 570 at 9, Doc. No. 54 at 47.)

Deborah instituted this appeal by filing a notice of appeal on November 19, 2015. (Doc. No. 1.) On February 29, 2016, Deborah sought an order staying that portion of the Plan that required sale of the Robin Hill home. (Doc. No. 41.) That motion was ultimately dismissed without prejudice on the parties' joint motion due to a settlement wherein Patrick agreed to quitclaim his interest in the home to Deborah. (Doc. Nos. 69, 72.) That agreement became final on May 12, 2016. (Doc. No. 73 at 2; Doc. No. 73-1 at 5–7.) Meanwhile, the parties filed their opening and reply appellate briefs. (Doc. Nos. 45, 75, 77.) Briefing was completed June 6, 2016. (Doc. No. 77.) This order follows.

## DISCUSSION

### I. *Whether the Appeal is Moot*

The first issue the Court must tackle is whether Deborah's appeal should be dismissed as moot. Patrick offers alternative theories he contends necessitate dismissal of this appeal on mootness grounds. First, Patrick asserts the doctrine of equitable mootness applies because Deborah failed to obtain a stay pending appeal and the plan has been carried out to substantial culmination, or the rights of third parties have intervened. (Doc.

No. 75 at 30–34.) Second, Patrick argues the mootness rule contained in 11 U.S.C. § 363(m) applies to moot any and all issues related to the sale of Deborah's interest in Foothills to Patrick. (*Id.* at 34–37.)[3]

### A. Equitable Mootness

On the issue of equitable mootness, Patrick argues Deborah's entire appeal is mooted because she failed to obtain a stay pending appeal, and (1) the plan has been carried out to substantial culmination, and/or (2) the rights of third parties have intervened. (*Id.* at 30–34.) Deborah retorts that her entire appeal is not mooted because it is not impossible to fashion a remedy that will not impact innocent bystanders. (Doc. No. 77 at 6.) Specifically, she argues reconsideration of the Foothills valuation would require Patrick only to make additional payments to her, which Patrick "anticipated and expressly provided for himself," and which would in no way alter the Plan. (*Id.*)

The jurisdiction of federal courts is limited to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. Federal courts may not entertain an appeal if the case is moot. *In re Thorpe Insulation Co.*, 677 F.3d 869, 879–80 (9th Cir. 2012) [hereinafter *In re Thorpe*]. However, the "party moving for dismissal on mootness grounds bears a heavy burden." *Id.* (quoting *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003)).

---

[3] Patrick also asserts that contract principles moot Deborah's appeal. (Doc. No. 75 at 37–38.) The Court rejects this contention. His argument requires the inferential leap that because a reorganization plan resembles a consent decree, and because a consent decree embodies characteristics of both a judgment and a contract, Deborah cannot appeal the Plan as it relates to Foothills because she has already accepted payment under the Plan, payment the Court notes is unrelated to Foothills and instead is spousal support arrearages and Deborah's community interest in a retirement account. (Bankr. Doc. No. 572 at 4, Doc. No. 54 at 87.) It is true that "[a] reorganization plan resembles a consent decree and therefore, should be construed basically as a contract." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993). However, courts in the Ninth Circuit have relied on this proposition of law predominantly to apply state contract interpretation principles to reorganization plans, not to find an appeal moot. *See, e.g.*, *id.*; *In re Yett*, 540 B.R. 445, 449–50 (D. Idaho 2015); *In re Kim*, No. 09-13736, 2011 WL 148061, at *1 (N.D. Cal. Jan. 18, 2011). The Court declines to extend this principle here.

The equitable mootness doctrine derives from the policy that debtors, creditors, and third parties should be able to rely on the finality of bankruptcy judgments. *Id.* In determining whether an appeal is equitably moot, courts in the Ninth Circuit first ask "whether a stay was sought, for absent that a party has not fully pursued its rights." *Id.* at 881. If a stay was sought but not obtained, the Court considers (1) "whether substantial consummation of the plan has occurred," (2) "the effect a remedy may have on third parties not before the court," and (3) "whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan . . . ." *Id.*

Considering all the factors, the Court finds this appeal is not equitably moot. It is undisputed that Deborah failed to seek a stay of the Plan as it relates to Foothills and that the Plan is substantially consummated. However, neither of these factors is dispositive where the reorganization is not complex and there is no possibility of negative impact on third parties. *In re PW, LLC*, 391 B.R. 25, 34 (9th Cir. BAP 2008) (finding one aspect of appeal not equitably moot where providing relief "raises neither the issue of complexity nor the issue of negative impact on third parties"); *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1351 (9th Cir. 1994) ("Failure to obtain a stay, standing alone, is often fatal but not necessarily so; nor is the 'substantial culmination' of a relatively simple reorganization plan.").

Rather, the Court finds more persuasive the fact that Patrick has failed to identify any third parties not before the Court who would be negatively impacted by remand to the bankruptcy court on issues related to Foothills.[4] *See In re PW, LLC*, 391 B.R. at 34 (finding one aspect of appeal not equitably moot in part because party asserting mootness "has not

---

[4] Patrick asserts that Deborah seeks to undo the entire Plan, which would require return of post-confirmation tax payments made to the Internal Revenue Service and California Franchise Tax Board, as well as possible revocation of the early discharge he received from Wells Fargo on the Robin Hill mortgages. (Doc. No. 75 at 33–34.) These arguments, however, are specious given that Deborah clearly does not seek to unravel the entire Plan but rather challenges issues only as they relate to Foothills.

identified any third party who would be prejudiced because it relied on the bankruptcy court's orders"). And, "most importantly," if Deborah is entitled to the relief she seeks on appeal, the bankruptcy court on remand would be able to devise an equitable remedy without upsetting the balance of the Plan. *In re Thorpe*, 677 F.3d at 883. Notably, Patrick admits that,

> [o]n its face, the Plan contemplates paying Deborah $962,915 (the amount of the SOD) within seven years. The Plan provides . . . that $213,893.42 of that sum would be paid in Years 6 and 7 of the Plan. However, due to the Bankruptcy Court's $242,500 litigation discount, there is now no need for Patrick to make the Years 6 and 7 payments to Deborah. Patrick's Plan obligations to Deborah of $720,415 will [accordingly] be paid out over five years.

(Doc. No. 75 at 14.) Given that the Plan provides for up to seven years' worth of payments, and the litigation discount results in Patrick now having to make only five years' worth of payments to Deborah, it would be easy for the bankruptcy court to remove or reduce the litigation discount, thus requiring Patrick to make payments for longer than five years, but not exceeding seven. For all these reasons, the Court finds Deborah's appeal is not equitably moot.

**B.     Mootness Rule Under 11 U.S.C. § 363(m)**

Patrick next argues that even if the general equitable mootness doctrine does not preclude consideration of Deborah's appeal, statutory mootness does. (Doc. No. 75 at 34–37.) Deborah does not respond to this argument.

11 U.S.C. § 363(b) permits the trustee or debtor in possession, after notice and a hearing, to sell property of the bankruptcy estate. *See also* 11 U.S.C. § 1107(a) (stating a debtor in possession has all the rights and powers, and must perform all the functions and duties, of a trustee, subject to certain exceptions). Section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether

or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m).

Patrick contends the mootness rule contained in § 363(m) applies to Deborah's appeal in its entirety because the only issues on appeal relate to the transfer of her interest in Foothills to Patrick. (Doc. No. 75 at 35–37.) Because she failed to seek a stay of the Plan to the extent it required the sale of her interest in Foothills, Patrick concludes § 363(m) precludes Deborah from attacking that sale on appeal.[5] (*Id.* at 37.)

Patrick's argument is lacking, however, in that he fails to argue he qualifies as a good faith purchaser. The mootness rule of § 363(m) applies only when a purchaser bought an asset in good faith. *See In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1173 (9th Cir. 1988). Although the Bankruptcy Code and rules do not define good faith, courts have found a "good faith purchaser" to be one who buys "in good faith" and "for value." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992). "Typically, lack of good faith is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (citation and internal quotation marks omitted). Accordingly, to assess whether § 363(m) applies to moot Deborah's appeal, the Court must address the merits of Deborah's appeal itself given that the issues she raises include whether the Plan was proposed in good faith and whether her interest in Foothills was properly valued.[6]

## II. *The Merits of Deborah's Arguments on Appeal*

On appeal, Deborah asserts the bankruptcy court erred in finding Patrick acted in good faith in filing the bankruptcy action and proposing the Plan. (Doc. No. 45 at 6.) She also argues the bankruptcy court erred in applying the litigation discount to the valuation

---

[5] The bankruptcy court noted that "the undisputed facts regarding the Plan transaction to be valued are that Patrick is *buying* Deborah's 25% interest and will hold a 50% interest total afterwards." (Bankr. Doc. No. 571 at 9, Doc. No. 54 at 62 (emphasis added).)

[6] At any rate, and as discussed below, the Court agrees with Patrick that Deborah's contentions on appeal are without merit. *See infra* Discussion Section II.

of her interest in Foothills. (*Id.*) Finally, Deborah asserts the bankruptcy court erred in refusing to amend its confirmation findings based on her *post hoc* waiver of claims she might have against Foothills, thus obviating the need for a litigation discount. (*Id.*) The Court will consider Deborah's good faith argument first. Then, because Deborah's arguments concerning the valuation of Foothills are related, the Court will consider Deborah's final two contentions together.[7]

A district court reviews a bankruptcy court's decision under the same standard of review circuit courts use in reviewing district court decisions: "Factual determinations are reviewed under the clearly erroneous standard, while determinations of law are reviewed *de novo*." *In re Andrews*, 155 B.R. 769, 770 (9th Cir. BAP 1993) (citing *In re Warren*, 89 B.R. 87, 90 (9th Cir. BAP 1988)). The Ninth Circuit has held that a "bankruptcy judge's finding that a debtor's plan is proposed in good faith is a finding of fact reviewed under the clearly erroneous standard." *In re Mertz*, 820 F.2d 1495, 1497 (9th Cir. 1987).

A finding is clearly erroneous when "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) ("A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record."). This standard does not "entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573. When the record indicates two permissible views of the evidence, "the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574; *see also United States v. Hinkson*,

---

[7] Deborah originally also sought review of the Plan as it relates to the Robin Hill home. (Doc. No. 45 at 6.) In light of the parties' settlement by which Patrick quitclaimed his interest in the home to Deborah, that aspect of Deborah's appeal is no longer an issue. (Doc. No. 75 at 27; Doc. No. 77 at 4.)

585 F.3d 1247, 1261 (9th Cir. 2009) (finding is not clearly erroneous if it "falls within any of the permissible choices the court could have made").

### A. Lack of Good Faith

In her opening brief, Deborah asserts the bankruptcy court erred in finding Patrick had filed the petition and proposed the Plan in good faith. (Doc. No. 45 at 6.) She points to three aspects of the bankruptcy proceedings she asserts demonstrate Patrick's lack of good faith: (1) he filed the bankruptcy petition to avoid the consequences of the PSOD; (2) the Plan required the sale of the Robin Hill home; and (3) the Plan forces her to transfer her interest in Foothills to Patrick. (*Id.*)

11 U.S.C. § 1129(a)(3) requires that a plan of reorganization be "proposed in good faith and not be any means forbidden by law[.]" "Section 1129(a)(3) does not define good faith." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002). "Good faith requires that a plan will achieve a result consistent with the objective purposes of the [Bankruptcy] Code." *In re Stolrow's Inc.*, 84 B.R. 167, 172 (9th Cir. BAP 1988). The policy of Chapter 11 is to successfully rehabilitate the debtor. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984).

"[T]he good faith inquiry is essentially directed to two questions: (1) whether the debtor is trying to abuse the bankruptcy process and invoke the automatic stay for improper purposes; and (2) whether the debtor is really in need of reorganization." *In re Marshall*, 298 B.R. 670, 681 (C.D. Cal. 2003). In making this determination, "the important point of inquiry is the plan itself . . . ." *In re Sylmar Plaza, L.P.*, 314 F.3d at 1074 (citation omitted). The good faith determination must be based on the totality of the circumstances. *Id.*

Having reviewed the parties' moving papers, the Court finds Deborah's good faith argument to be groundless. First, the Court notes that Deborah did not argue before the bankruptcy court that Patrick's attempt to revalue Foothills evidences a lack of good faith. (Bankr. Doc. No. 455 at 26, Doc. No. 53 at 42; Bankr. Doc. No. 571 at 15–16, Doc. No. 54 at 68–69.) Accordingly, that aspect of her good faith argument on appeal is waived. *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000) ("Absent exceptional

circumstances, we generally will not consider arguments raised for the first time on appeal[.]"); *In re Virgil Bros. Constr., Inc.*, 193 B.R. 513, 520 (9th Cir. 1996) ("The rule is well established that an issue not raised by a party in the court below will not be considered on appeal, absent exceptional circumstances.").

Second, while Deborah identifies three aspects of the bankruptcy proceedings she contends demonstrate Patrick's lack of good faith, her argument focuses almost exclusively on the sale of the Robin Hill home. (Doc. No. 45 at 34–37.) Given that Patrick has since quitclaimed his interest in the home to Deborah, this is no longer an issue, and Deborah concedes that issues relating to the home are moot. (Doc. No. 77 at 4.)

Finally, even when considering the merits of that portion of her argument that is not moot, the Court finds the bankruptcy court did not clearly err in finding the Plan was proposed in good faith. The only aspect of her argument that touches on either of the other two points Deborah identified as evidencing a lack of good faith is the following paragraph:

> It seems more than obvious here that Patrick's purpose, at least to a large extent, also was to seek a second bite at the apple in valuing the Foothills stock[,] which worked. It is incomprehensible that Patrick would have ever sold the stock or even his share of the stock and accepted payment over seven [] years without any collateral or assurance that the price would be paid. There is not even a down payment! But the Plan does just that. That cannot be a fair "result consistent with the objectives and purposes of the Bankruptcy Code." This cannot be good faith. This is a use of bankruptcy to achieve a family law goal that is not available in family court.

(Doc. No. 45 at 35.)

In addition to being waived, this argument amounts to nothing more than Deborah's musings.[8] This is insufficient to leave the Court with a "'definite and firm conviction that

---

[8] Not only is Deborah's argument devoid of any factual assertions, it is also bereft of any citation to the record, notwithstanding having attached a seven-part appendix comprising in excess of 900 pages. (Doc. Nos. 50–56.) *See* Fed. R. Bankr. Proc. 8014(a)(8) ("The appellant's brief must contain the following under appropriate headings and in the order indicated: . . . the argument, which must contain the appellant's contentions and the reasons for them, *with citations to the authorities and parts of the record on which the appellant*

10

a mistake has been committed.'" *Anderson*, 470 U.S. at 573 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395). What is more, it is factually incorrect. The record reveals that Patrick did not file the bankruptcy petition seeking a "second bite" at revaluing the parties' interest in Foothills. As Deborah herself concedes, Patrick's Schedule B, which accompanied his bankruptcy petition, listed the value of Foothills at $562,250, "the amount at which the Family Law Judge valued the asset." (Doc. No. 45 at 15; *see* Bankr. Doc. No. 22 at 7, Doc. No. 50 at 29.) Furthermore, Patrick argued that the Foothills shares should be valued as of the date set forth in the family court judgment. (*See* Bankr. Doc. No. 418 at 22–25, Doc. No. 75-3 at 60–63.) In other words, Patrick essentially argued for the bankruptcy court to give preclusive effect to the family court's valuation.[9] Rather, it was Deborah who sought the opportunity to recalculate the value of Foothills, asserting it had increased in value. (Bankr. Doc. No. 455 at 16, Doc. No. 53 at 32; *see* Bankr. Doc. No. 571 at 8–9, Doc. No. 54 at 61–62.)

As to her argument that Patrick proposed the Plan in an attempt to circumvent the PSOD, it appears Deborah raised this issue before the bankruptcy court. (Bankr. Doc. No. 455 at 26, Doc. No. 53 at 42.) The bankruptcy court rejected this contention, noting that "[e]ven if Patrick's exclusive purpose in filing the Plan [was to avoid the adverse finding of the family court], this fact [] does not support a finding of bad faith because pursuit of a bankruptcy remedy is alone not bad faith." (Bankr. Doc. No. 455 at 27, Doc. No. 53 at 43.)

---

*relies*[.]" (emphasis added)); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1548 (9th Cir. 1988) [hereinafter *Nilsson*] ("If a brief fails to contain the contentions of the appellant with respect to the views presented, and fails to contain citations to authorities, statutes and the record, the issue is waived.").

[9] Of course, he made this argument in an attempt to prohibit Deborah from seeking a higher valuation. (Bankr. Doc. No. 418 at 22–25, Doc. No. 75-3 at 60–63.) Be that as it may, Patrick nonetheless argued that the bankruptcy court give some preclusive effect to the family court valuation, undermining Deborah's contention on appeal that in filing his bankruptcy petition, Patrick was seeking revaluation of Foothills.

After reviewing the parties' arguments and the bankruptcy court's ruling under controlling legal authority, the Court is not persuaded the bankruptcy court clearly erred in rendering its good faith determination. The Ninth Circuit's decision in *In re Sylmar Plaza, L.P.* is dispositive. There, the creditor appealed confirmation of a reorganization plan that had the effect of reducing its claim against the debtor by $1 million. 314 F.3d at 1073. The creditor argued the plan lacked good faith because it left the debtors solvent while permitting them to avoid paying interest to the creditor that the creditor was otherwise due under the parties' pre-petition agreement. *Id.* at 1074. The Ninth Circuit rejected such a bright line rule:

> [T]hat a creditor's contractual rights are adversely affected does not by itself warrant a bad faith finding. "In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." *In re PPI Enters., Inc.*, 228 B.R. 339, 344–45 (Bankr. D. Del. 1998) (citation omitted). "[T]he fact that a debtor proposes a plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith." *Id.* at 347 (citation omitted) (stating that it is not bad faith to take advantage of a particular provision of the Code for the purpose of capping the amount of a creditor's claim).

*Id.* at 1075.

Like the creditor's argument in *In re Sylmar Plaza, L.P.*, Deborah's assertion that Patrick's petition filing sought to avoid the PSOD's consequences is, by itself, sufficient to establish bad faith. *See also In re Stolrow's Inc.*, 84 B.R. at 172 ("Appellant has not met her burden of showing that the bankruptcy court's finding of good faith was clearly erroneous, particularly since her allegations of bad faith go primarily to the filing of the petitions rather than to the proposal of the Plan."). This is particularly so in light of the totality of the circumstances. As the bankruptcy court found, following a two-day evidentiary hearing, "Deborah's claims will be paid in full with interest at the federal judgment rate"; "Deborah receives under the Plan an additional asset than she received under the [SOD]"; and Patrick "fares less well economically than does Deborah for the years following confirmation of the Plan." (Bankr. Doc. No. 571 at 16–17, Doc. No. 54 at

12

69–70.) Meanwhile, the bankruptcy court found reorganization was necessary because Patrick "did not, and still does not, have sufficient liquid assets to pay Deborah's claims, and other creditors' claims in full." (Bankr. Doc. No. 571 at 17, Doc. No. 54 at 70.) The bankruptcy court's determination also relied on its finding that Deborah and her witnesses were less credible than Patrick and his witnesses. (Bankr. Doc. No. 571 at 3–4, 16–17, Doc. No. 54 at 56–57, 69–70.)

For all these reasons, the Court finds the bankruptcy court did not clearly err in concluding the Plan was proposed in good faith.

### B. Valuation of Foothills and Motion for New Trial

Deborah next argues the bankruptcy court erred in denying her motion for new trial because the Foothills valuation was based on a manifest error of fact. (Doc. No. 45 at 42.) Specifically, Deborah contends there was no evidentiary basis to find a litigation discount necessary, and even if one was necessary, no evidentiary basis to support applying a $242,500 discount. (*Id.*) Patrick responds that the bankruptcy court correctly applied the litigation discount in light of Deborah's threat to sue Foothills, Patrick, and Ashworth for $970,000; the testimony of both parties' experts; and Deborah's failure to retract her litigation threats in a timely manner or otherwise address the litigation discount issue during the hearing. (Doc. No. 75 at 56–63.)

A bankruptcy court's denial of a motion for new trial is reviewed for abuse of discretion. *In re JWJ Contracting Co.*, 287 B.R. 501, 505 (9th Cir. BAP 2002). "[T]he first step of our abuse of discretion test is to determine *de novo* whether the trial court identified the correct legal rule to apply to the relief requested. If the trial court failed to do so, we must conclude it abused its discretion." *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If the trial court identified the correct legal rule to apply to the relief requested, the reviewing court must then determine whether the trial court's "resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record . . . ." *Id.* at 1263; *see In re Hernandez*, 483 B.R. 713, 719 (9th Cir. BAP 2012) (same). In other words,

if the court below identified the correct legal rule, that court abuses its discretion in denying a motion for new trial only if it "ma[de] a clearly erroneous finding of fact." *Hinkson*, 585 F.3d at 1262.

The Court agrees with Patrick that the bankruptcy court's denial of Deborah's motion was not an abuse of discretion. First, the bankruptcy court identified the correct legal rule. A motion for new trial brought under Federal Rule of Civil Procedure 59[10] may not be granted absent a manifest error of law or fact, the presentation of newly discovered or previously unavailable evidence, to prevent manifest injustice, or to reflect an intervening change in controlling law. *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (C.D. Cal. 2003) [hereinafter *In re Oak Park*]. The bankruptcy court identified this rule throughout its analysis. (Bankr. Doc. No. 570 at 9–10, Doc. No. 54 at 47–48.)

Second, the bankruptcy court's refusal to grant Deborah's requested relief did not result from clear error. The only evidence adduced at trial was that a willing buyer would consider threatened litigation when assessing the amount to pay for Foothills' stock. Both parties' experts testified to this effect. (Bankr. Doc. No. 542 at 10–11, Doc. No. 53 at 126–27; Bankr. Doc. No. 570 at 9–10, Doc. No. 54 at 47–48.) The only expert to testify to the *amount* of the discount was Jones, and he arrived at his figure—a litigation discount of $242,500—by dividing Deborah's threatened claim against Foothills, Patrick, and Ashworth ($970,000) by 25%, thus representing "the maximum exposure a buyer would face." (Bankr. Doc. No. 570 at 9, Doc. No. 54 at 47; *see* Bankr. Doc. No. 491 at 28 ¶¶ 121–22, Doc. No. 53 at 99.) Notwithstanding knowing that Jones would testify to this effect for several days prior to trial, Deborah "did not object to or refute [Jones's] testimony, nor did she ask questions of either expert about whether it is necessary to further quantify the

---

[10] Deborah brought her motion under Bankruptcy Rule 9023. (Bankr. Doc. No. 570 at 2, 6, Doc. No. 54 at 40, 44.) That rule incorporates Rule 59. Fed. Bankr. R. 9023; *see In re Oak Park*, 302 B.R. at 683.

14

litigation risk before applying the discount."[11] (Bankr. Doc. No. 570 at 9, Doc. No. 54 at 47.) The bankruptcy court relied on the only evidence presented at trial to quantify the litigation discount, which was presented by the expert whose testimony "reflected an opinion of fair market value that was more comprehensive and persuasive than that of [Deborah's expert] and was more credible." (Bankr. Doc. No. 542 at 7, Doc. No. 53 at 123; *see* Bankr. Doc. No. 571 at 3–4, Doc. No. 54 at 56–57.) The Court finds the bankruptcy court's application and quantification of the litigation discount was not clear error.[12] As such, the bankruptcy court did not abuse its discretion in denying Deborah's motion for new trial.[13]

---

[11] On July 20, 2015, in lieu of direct testimony, Patrick submitted a declaration by Jones, which attested to the application and quantification of the litigation discount. (Bankr. Doc. No. 542 at 12, Doc. No. 53 at 128.)

[12] In her opening brief, Deborah expends much energy in arguing the bankruptcy court used the wrong standard for determining Foothills' value. (Doc. No. 45 at 38–41.) However, in her reply brief, she asserts "[t]he experts were not that far apart on the *total* value of the Foothills business, i.e., without the litigation discount, and thus the value of Deborah's share. *Deborah does not quarrel with the value of the total business*." (Doc. No. 77 at 10 (emphasis added).) Rather, she focuses her argument on the propriety of the litigation discount, (*id.* at 10–13), which is the valuation issue identified in her opening brief's statement of issues, (Doc. No. 45 at 6). Given the clarification that Deborah takes issue only with the litigation discount and not Foothills' value before the discount's application, (Doc. No. 77 at 10), the Court will not address whether the bankruptcy court used the correct standard to determine Foothills' valuation.

[13] Deborah argues at length that the bankruptcy court's determinations relating to the litigation discount were premised on manifest errors of fact. (Doc. No. 45 at 42; Doc. No. 77 at 16–17.) However, it is not the Court's role to assess in the first instance whether a manifest error of fact was made. Rather, as a reviewing court, the Court is obligated to determine whether the bankruptcy court committed clear error in its factual determinations and abused its discretion in denying Deborah's motion below. *See Anderson*, 470 U.S. at 573 ("The reviewing court oversteps the bounds of its duty . . . if it undertakes to duplicate the role of the lower court.").

To the extent Deborah asserts it was clear error to rely on Jones's testimony to conclude a discount of $242,500 was appropriate, the Court disagrees. Jones was the only expert to testify to the amount of the discount, and the bankruptcy court found his testimony credible. Without citation to authority to support Deborah's position that the bankruptcy

This conclusion is not undermined by Deborah's *post hoc* notice of waiver. On August 17, 2015, seventeen days after the close of evidence, Deborah filed a document purporting to waive her claims against Foothills:

> Deborah [] has waived and hereby waives any claims she has or may have against Foothills . . . for (1) attorney's fees arising from the family law or bankruptcy proceedings, or (2) unpaid dividends or distributions paid to Patrick [] (which was never asserted as a claim against Foothills).
>
> This notice is given to clarify Deborah's position in response to the contentions raised at trial that the valuation of Foothills should be discounted on account of the possibility of claims that may be asserted by Deborah against Foothills. Deborah wishes to assure all parties and the Court that she is not pursuing and has not pursued the claims referenced above, that there are no litigation claims pending, and that the valuation of Foothills should not be discounted by reason of such claims.

(Bankr. Doc. No. 537 at 2, Doc. No. 53 at 115.)[14]

The bankruptcy court determined this waver was "too little and too late." (Bankr. Doc. No. 542 at 12, Doc. No. 53 at 128.) The Court finds this determination is not clearly erroneous. The bankruptcy court found there was no good cause to consider the waiver because it was filed more than two weeks after the evidence was closed.[15] (*Id.*)

---

court was required to quantify with precision the likelihood of success on her claims against Foothills, Patrick, and Ashworth, the Court finds no clear error. (Doc. No. 77 at 15 (calling the failure to quantify the likelihood of success "clear error" without citing authority).) *Nilsson*, 854 F.2d at 1548 ("If a brief fails to contain the contentions of the appellant with respect to the views presented, and fails to contain citations to authorities, statutes and the record, the issue is waived."). (*See also* Bankr. Doc. No. 565 at 5, Doc. No. 54 at 33; Bankr. Doc. No. 570 at 10, Doc. No. 54 at 48 (noting that when Deborah asserted this argument below, she "d[id] not cite any legal authority" there as well).)

[14] Deborah reiterates this waiver before this Court. (Doc. No. 77 at 17.)

[15] Deborah contends the untimeliness of her filing should have been of no consequence because it "did not harm anyone in the slightest but amounts to an arbitrary [] penalty against Deborah." (Doc. No. 77 at 17.) However, she does not account for the prejudice to Patrick that would have arisen given he would have been "unable to address the effect of the waiver on the value of Foothills at the time of the Evidentiary Hearing, including whether and how Jones would adjust his valuation in light of the waiver." (Bankr. Doc.

Notwithstanding this determination, the bankruptcy court did consider the waiver's effect on Foothills' valuation, concluding it did not remove the litigation risk Deborah had created by threatening to sue Foothills *and* its shareholders in light of Foothills' history and "continuing commitment" to paying Ashworth and Patrick's legal fees. (Bankr. Doc. No. 542 at 12–13, Doc. No. 53 at 128–29.) Furthermore, the bankruptcy court noted that "Foothills could again be the source of any shortfall under the Plan up to an unknown limit if Deborah's $970,000 claim against Patrick were to succeed[.]" (Bankr. Doc. No. 542 at 13, Doc. No. 53 at 129.) Deborah makes no argument that this portion of the bankruptcy court's determination was clearly erroneous, and the Court concludes it was not.

In sum, the Court finds the bankruptcy court did not abuse its discretion in denying Deborah's motion for new trial. The Court also finds the bankruptcy court's factual findings underlying the application and amount of the litigation discount are not clearly erroneous.

## CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the bankruptcy court's rulings in all respects. The Court directs the Clerk of Court to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: April 21, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

No. 542 at 12, Doc. No. 53 at 128.) Furthermore, her failure to meet deadlines was a recurring theme throughout the bankruptcy proceedings. (*See* Bankr. Doc. No. 455 at 2, 5, 8–10, Doc. No. 53 at 18, 21, 24–26.) In light of this history, the Court cannot say the bankruptcy court clearly erred in finding the notice of waiver too late.